Jaime **JAIMEZ–REVOLLA** a/k/a Jaime **Jaimez-Zamora, Appellant,**

v.

Griffin B. **BELL, Attorney General of the United States, United States Department of Justice, Immigration and Naturalization Service.**

No. 77–1949.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 17, 1978.

Decided March 27, 1979.

Charlotte B. Hallam, Washington, D. C., with whom Margaret A. Beller, Washington, D. C., was on the brief, for appellant.

Lauren S. Kahn, Atty., Dept. of Justice, Washington, D. C., with whom Richard I. Chaifetz, Atty., Department of Justice, Washington, D. C., was on the brief, for appellee.

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. 8 U.S.C. § 1182 (1976):

    (a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be

---

Before BAZELON and McGOWAN, Circuit Judges, and GASCH *, United States District Court Judge for the District of Columbia.

PER CURIAM.

Appellant, a citizen of Mexico currently residing in that country, has appealed from an order of the district court upholding the decision of the Regional Director of the Immigration and Naturalization Service (INS), acting for the Attorney General, denying appellant's application for permission to reapply for admission to the United States following deportation or removal. The district court found that in addition to previous violations of immigration laws, the appellant had failed to exhibit good moral character by committing adultery. The court held that the Attorney General's decision denying permission to reapply was not arbitrary or an abuse of discretion. For the reasons stated herein, we agree that the Attorney General's decision in this case did not constitute an abuse of discretion.

I.

From 1966 to 1973 appellant resided in Mexico with Alicia Cruz-Garcia. Five children were born of this relationship with the most recent birth occurring in August, 1974. Appellant and Ms. Cruz-Garcia have never been married and Mexico does not recognize common-law marriages. On March 20, 1972 appellant entered the United States without inspection at Laredo, Texas. He was apprehended by the INS and deported on July 21, 1972. Appellant reentered the United States as a visitor for pleasure on August 5, 1972, without having first secured the permission of the Attorney General, which is required when an applicant has previously been deported or removed.[1]

excluded from admission into the United States:

.    .    .    .    .

    (17) Aliens who have been arrested and deported or who have fallen into distress and have been removed pursuant to this chapter or any prior act, or who have been removed as alien enemies, or who have been removed

The terms of his admission limited his visit to certain southwestern states and required his departure by August 20, 1972. He did not abide by either of these restrictions.

On January 5, 1973, in Washington, D. C., appellant married Irene Hernandez, a naturalized citizen of the United States, who filed a petition to classify appellant as an immediate relative.[2] This petition was approved on August 2, 1973 and appellant voluntarily returned to Mexico. On August 19, 1973, he filed an application for permission to reapply for admission after deportation or removal.

While in Mexico, appellant resumed his relationship with Ms. Cruz-Garcia and a fifth child was born to them. Appellant maintains that he has not had sexual relations with her since January 5, 1974 and that Irene Hernandez Jaimez, who had moved to Mexico on July 28, 1974, is aware of and has forgiven the extramarital relationship and is also aware of appellant's continued financial support for the children born of that relationship. Mrs. Jaimez subsequently returned to the United States because of her inability to obtain permanent employment in Mexico and need to reside in the United States in order to care for her ailing mother and to look after real property located here.

On April 23, 1974, Alicia Cruz-Garcia gave a written statement to the INS in which she said that she still considered appellant to be her husband despite his U.S. marriage. Ms. Cruz-Garcia also stated that appellant "still lives here" and that they maintained a family unit. In a subsequent interview on July 21, 1975, she said that appellant had told her that he intended to arrange passports for her and their children.

On October 11, 1974, a notice of intent to revoke Mrs. Jaimez' visa petition for her husband was issued based on the alleged failure to establish a bona fide marital relationship. An investigation was conducted into the validity of the marriage and focused on appellant's relationship with Ms. Cruz-Garcia. On October 21, 1975, appellant's application for permission to reapply was denied by the District Director of the INS on the ground that appellant had "flagrantly violated" U.S. immigration laws and had not exhibited good moral character by living with another person following his legal marriage.

Appellant appealed to the Regional Commissioner. On September 7, 1976, the Regional Commissioner affirmed the initial decision and dismissed the appeal. In support of his motion to reconsider, appellant submitted an affidavit by Ms. Cruz-Garcia in which she stated that she did not want to emigrate to the United States and that she had never discussed such a move with appellant. On February 22, 1977, the Regional Commissioner denied the motion for reconsideration, stating that appellant's motion was based primarily on conflicting and unsubstantiated statements and that "nothing has been submitted that would cause any change in our prior decision." Appellant alleged error in this denial and brought this action for declaratory relief in the United States District Court for the District of Columbia. On August 23, 1977, the court granted appellee's motion for summary judgment and dismissed appellant's complaint.

## II.

Before addressing the central issue of this appeal, it is necessary to consider two threshold issues raised by appellee in its brief and at oral argument. The Attorney General takes the position that appellant, who presently resides outside the United States, lacks standing to maintain this action and there is no basis for judicial review of the decision denying permission to reapply for admission.

at Government expense in lieu of deportation pursuant to section 1252(b) of this title, unless prior to their embarkation or reembarkation at a place outside the United States or their attempt to be admitted from foreign contiguous territory, the Attorney General has consented to their applying or reapplying for admission.

2.  8 U.S.C. § 1151(b) (1976).

▮ The strong presumption in favor of judicial review can be overcome only by "clear and convincing evidence" that Congress intended to cut off review above the agency level. *Hahn v. Gottlieb*, 430 F.2d 1243, 1249 (1st Cir. 1970). Such evidence is not presented here, as other courts have recognized in permitting review of decisions under 8 U.S.C. § 1182. *See Murillo-Aquilera v. Rosenberg*, 351 F.2d 389, 390 (9th Cir. 1965); *Gonzalez-Jiminez v. Del Guerico*, 253 F.2d 420, 421 (9th Cir. 1958).

▮ Appellant has also satisfied the requirements for standing to maintain this action because he has demonstrated "injury in fact," and he is arguably "within the zone of interests to be protected or regulated by the statute." *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). In opposing appellant's standing to sue, the Government relies on *Chinese American Civic Council v. Attorney General*, 396 F.Supp. 1250 (D.D.C.1975), *aff'd on other grounds*, 185 U.S.App.D.C. 1, 566 F.2d 321 (1977), in which the district court held that a nonresident alien who had never been within the United States lacked standing to challenge the denial of entry to this country. This lack of standing is based on jurisprudential considerations that reflect a policy "against affording a Federal forum for a person anywhere in the world challenging denial of entry or immigration status." 396 F.Supp. at 1251.

The *Chinese American* decision is factually distinguishable from the situation presented here, for appellant had been in this country and voluntarily left to pursue his request for readmission. To deny standing to one who had already been in this country would encourage illegal aliens to remain here illegally rather than return home and seek legal entry through an application for readmission. In addition, Congress specifically provided a procedure by which deported aliens could seek permission to reapply for readmission. 8 U.S.C. § 1182.

It would be inconsistent for us to hold that Congress intended the Attorney General's decision to be reviewable, but simultaneously to deny standing in this situation because of jurisprudential considerations. For these reasons, we affirm the district court's decision that appellant has standing to challenge the Attorney General's denial of the application for readmission.

### III.

▮ The basic issue raised on appeal is whether the decision of the Regional Commissioner on behalf of the Attorney General was arbitrary and an abuse of discretion. Appellant contends that his participation in an extramarital relationship did not justify a finding that he had failed to exhibit the good moral character necessary for readmission.

▮ In cases such as this, the standard of judicial review is whether the agency's action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1976). Abuse of discretion may be found "only if there is no evidence to support the decision or if the decision is based on an improper understanding of the law." *Song Jook Suh v. Rosenberg*, 437 F.2d 1098, 1102 (9th Cir. 1971). The burden here is on appellant to show that the denial of his petition was unsupported. *See Doraiswamy v. Secretary of Labor*, 180 U.S.App.D.C. 360, 364, 555 F.2d 832, 836 (1976).

We find that appellant has failed to meet this burden. The record in this case establishes that appellant has violated United States immigration laws on at least two occasions and has committed a criminal offense as a result.[3] It is not necessary for us to consider whether appellant's extramarital relationship represents a lack of good moral character, because his proven disregard of the immigration laws supports the action taken by the Attorney General. We find that the decision denying permission to

---

3. Reentry after deportation without the permission of the Attorney General is an offense punishable by imprisonment for not more than two years, a fine of not more than $1,000, or both. 8 U.S.C. § 1326 (1976).

reapply was not arbitrary and did not constitute an abuse of discretion. The decision of the district court is affirmed.