TENNESSEE DEPARTMENT OF
EMPLOYMENT SECURITY,
Plaintiff-Appellant,

v.

SECRETARY OF LABOR,
Defendant-Appellee.

No. 85–5652.

United States Court of Appeals,
Sixth Circuit.

March 24, 1986.
Decided Sept. 15, 1986.

Dianne Stamey (argued), W.J. Michael Cody, Atty. Gen. of Tennessee, Nashville, Tenn., for plaintiff-appellant.

Joe B. Brown, U.S. Atty., Nashville, Tenn., Robert S. Greenspan, John S. Koppel, (argued), Appellant Staff-Civil Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before RYAN, Circuit Judge, CELEBREZZE and BROWN, Senior Circuit Judges.

BAILEY BROWN, Senior Circuit Judge.

Plaintiff-Appellant Tennessee Department of Employment Security (appellant) brought this action against defendant-appellee Secretary of Labor (Secretary) under the Comprehensive Education and Training Act, 29 U.S.C. §§ 801 *et seq.*, *repealed by* Act of October 13, 1982, Pub.L. No. 97–300, Title I, § 184(a)(1), 96 Stat. 1357 (CETA), and its successor act, the Job Training Partnership Act, 29 U.S.C. §§ 1501 *et seq.* (Supp.1985) (JTPA), in the federal district court for the Middle District of Tennessee. Appellant sought declaratory, injunctive and monetary relief on the theory that the Secretary had unlawfully applied the "Transition" provision of the JTPA (§ 1591), by refusing to grant appellant further CETA/JTPA funds to complete activities incident to closing out its CETA program. Without reaching the merits of appellant's claim, the district court concluded that it lacked subject matter jurisdiction over the action, because a provision of CETA limited judicial review of certain claims under CETA against the Secretary to the courts of appeals. 29 U.S.C. § 817(a) (repealed 1982). While not relied upon by the district court or cited by the parties, the JTPA provision similarly limiting judicial review to the courts of appeals, 29 U.S.C. § 1578(a), took effect on the same date as the repeal of CETA's provisions, October 13, 1982.

Appellant contends that the district court erroneously concluded that jurisdiction over this action lay exclusively in the court of appeals, and therefore erred by refusing to exercise its own jurisdiction under 28 U.S.C. § 1331 (federal questions) and 5 U.S.C. § 702 (review of agency actions). On this basis, appellant asks this court to reverse and remand to the district court for a hearing on the merits. Because we find that the replacement of 29 U.S.C. § 817(a) with 29 U.S.C. § 1578(a) evidences plain congressional intent to continue the policy of committing to the courts of appeals review of decisions to deny funds to CETA or JTPA participants, we affirm the judgment dismissing the complaint.

## I

In 1982, the JTPA replaced CETA as the primary federal program funding state efforts at job training and education of youth, welfare recipients, the economically disadvantaged, and dislocated workers. *See* S.Rep. No. 469, 97th Cong., 2d Sess. 1 (1982), *reprinted in* 1982 U.S.Code Cong. & Admin.News 2636. Both statutes instruct the Secretary to administer congressionally-appropriated funds to qualifying state agencies for use in approved job training and educational programs, and to establish standards for such administration. While most of CETA was repealed on October 13,

1982,[1] the JTPA continued funding of all CETA program activities until September 30, 1983, 29 U.S.C. § 1591(a). To ensure a smooth transition, § 1591(c)(4) of the JTPA permitted "recipients of financial assistance" under CETA or the JTPA, with funds received under either act prior to October 1, 1983, to "conduct any ... activity deemed necessary by the recipient to provide for an orderly transition" to programs funded under the new statute. In addition, § 1591(d) provided that "all orders, determinations, rules, regulations, permits, grants, contracts, certificates, licenses and privileges" would continue "until modified or revoked by the Secretary." *Id.* *See also* S.Rep. No. 469, at 1982 U.S. Code Cong. & Admin.News 2664–65.

It is agreed that the Secretary implemented these statutory provisions by imposing—without utilizing rulemaking procedures under the Administrative Procedure Act, 5 U.S.C. § 553 (1982) (APA), or its CETA counterpart, 29 U.S.C. § 828(a)(1) (repealed 1982),[2]—a deadline beyond which no further expenses incident to closing-out CETA plans could be incurred. Previously appropriated CETA funds from fiscal year 1983 were to be available to sponsors, like appellant, through an Administrative Cost Pool (ACP). Pursuant to appellant's request, the Secretary extended the deadline for such expenditure of ACP funds, first to March 31, 1984, and then again to July 31, 1984. Although appellant requested a third indefinite extension prior to the last date, the Secretary denied the request on August 20, 1984.

Appellant's current complaint arises out of some 1.4 million dollars in costs, submitted by subrecipients of CETA funds through appellant, that have been questioned by the Secretary. To complete its audits and resolve these claims prior to litigation, appellant wishes to expend ACP funds. The Secretary's refusal to extend further expense-incurring authority prevents appellant from using these funds to complete its audits, forcing it to expend state funds for that purpose.

Appellant characterizes its pursuit of these audits as "any ... activity deemed necessary by the recipient to provide for an orderly transition," 29 U.S.C. § 1591(c)(4), and contends that the Secretary's refusal to extend appellant's authority to use existing ACP funds to wind-up its CETA audits under § 1591 was arbitrary and capricious, and hence an unlawful abuse of the Secretary's statutory discretion. In the alternative, appellant argues that the Secretary's transition timetable constituted an administrative rule, which may not be enforced against appellant for lack of publication. However, the merits of these claims are not before this court, because the district court dismissed solely for lack of subject matter jurisdiction. Appellant does not seek review of the merits here, but asks only that the case be remanded to the district court with instructions to hear the claims on their merits.

## II

The question presented to this court then is whether the district court correctly concluded that it lacked subject matter jurisdiction over a dispute arising out of the Secretary's decision to terminate all use of any remaining CETA funds. Although we conclude that the jurisdictional limits of the JTPA, not of CETA, are applicable, we nonetheless agree with the district court's affirmative answer to this question.

### A. Inapplicability of CETA, 29 U.S.C. § 817

■ The parties argued this case below and before this court as if the relevant jurisdictional provision were 29 U.S.C. § 817(a) (repealed 1982), which conferred

---

1. *See* Act of October 13, 1982, Pub.L. No. 97–300, Title I, § 184(a)(1), 96 Stat. 1357 (1982).

2. Since the Secretary concedes that the publication requirements of CETA and the APA were not met, we assume that he would likewise agree that any applicable publication requirements in the JTPA were not met. *E.g.,* 29 U.S.C. § 1572(b) & (d). We express no view on whether publication under any of these sections was required.

seemingly exclusive jurisdiction on the regional courts of appeals,

> [i]f any ... recipient [appellant] is dissatisfied with the Secretary's *final action with respect to a sanction* under § 816 of this title, or if any interested person is dissatisfied with or aggrieved by any *final action* of the Secretary *authorized under § 816* of this title....

*Id.* (emphasis added). However, § 817, like the other provisions of CETA not expressly continued by the JTPA, became inoperative after the effective date of the latter statute, October 13, 1982. The JTPA does contain a "savings" clause, which provides that no judicial or administrative proceeding under CETA pending on October 13, 1982, or begun between October 13, 1982 and September 30, 1984, shall be affected by the JTPA. 29 U.S.C. § 1591(e). This provision is inapplicable here, however, where the judicial proceeding was not commenced until December 5, 1984, and where, assuming appellant's efforts to retain use of ACP funds were in the nature of an "administrative proceeding," any such proceeding was not "begun ... under" CETA, as required by the savings clause. Rather, any such "administrative proceeding" would have been under the transitional provision of the JTPA, 29 U.S.C. § 1591, since only that provision authorized continued use of CETA funds after October 13, 1982. In short, § 817 was not in effect at any time pertinent to appellant's claims. Thus, subject matter jurisdiction over this action cannot be controlled by 29 U.S.C. § 817.[3]

### B. Applicability of JTPA, 29 U.S.C. § 1578

It does not follow, however, that the district court must be reversed, because the JTPA contains a limitation on judicial review of the Secretary's funding decisions quite similar to that contained in § 817. 29 U.S.C. § 1578. While differing from its predecessor in certain particulars not relevant here, the successor statute likewise provides:

> With respect to *any final order* by the Secretary under section 1576 of this title whereby the Secretary determines ... *not to award ... financial assistance,* ... any party to a proceeding which resulted in such final order may obtain review of such final order in the United States Court of Appeals having jurisdiction over the applicant or recipient of funds....

*Id.* (emphasis supplied). The Secretary's main contention below, with which the district court agreed, was that his action was "any final action authorized under § 816," 29 U.S.C. § 817 (repealed 1982), and therefore that judicial review of the funding cutoff could be had only in the court of appeals. Although we find the controlling statute to be 29 U.S.C. § 1578, the similarity of the operative language in both statutes leads us to the same result as the district court.

The JTPA expressly requires the Secretary, "from funds appropriated pursuant to" CETA, to "provide financial assistance ... in the same manner that such assistance was provided under [CETA] ... until September 30, 1983." 29 U.S.C. § 1591(a). Otherwise, spending of funds under the JTPA is committed entirely to the Secretary's discretion. 29 U.S.C. § 1579(c).[4] The Secretary's argument on the merits must be that the funding discretion granted to him under this section, read in light of the evident congressional aim of winding-up CETA programs, authorizes him to impose a final deadline on the use of CETA funds. Consequently, the Secretary's jurisdictional argument would be that this exercise of his discretion is a "determination not to award financial assistance," 29 U.S.C. § 1576(a), which triggers the admin-

---

3. Although we decide this case under § 1578 of the JTPA, it is our view that the same result would obtain under § 817 of CETA, as the district court decided.

4. **(c) Secretary's Discretion**

   The Secretary may make such grants, contracts, or agreements, establish such proce-dures and make such payments ... or otherwise allocate or expend funds under this chapter as necessary to carry out this chapter....

istrative and judicial review mechanisms of §§ 1576 and 1578.

■ We are not called upon to determine whether the Secretary acted within his discretion in prohibiting any further use of CETA funds as of July 31, 1984. The merits of appellant's claims are for another day. However, we must decide whether that prohibition was a "final order by the Secretary under section 1576 . . . whereby the Secretary determine[d] . . . to not award . . . financial assistance." 29 U.S.C. § 1578. Only if the funding cutoff were such a "final order" would judicial review be limited to the court of appeals under § 1578. We conclude that the language of § 1576, illuminated by the legislative history, the predecessor statute, and analogous case law, indicates Congress's intent to encompass in that section judicial review of the termination of funding in this case.

Subsection 1576(a) – entitled "Hearing after denial of assistance or sanction by Secretary"—instructs "any applicant for financial assistance" who is "dissatisfied because the Secretary has made a determination not to award financial assistance" to request a hearing before an administrative law judge (ALJ). 29 U.S.C. § 1576(a). The ALJ's decision is to be considered "final action by the Secretary," unless the Secretary accepts the case for his own administrative review. 29 U.S.C. § 1576(b). Judicial review then is authorized, but only for the resulting "final order" of the Secretary refusing to award funds. 29 U.S.C. § 1578(a)(1), *incorporating* 29 U.S.C. § 1576(d) (§ 1578 applicable to "any final action of the Secretary").[5]

Unlike that authorized by former § 817 then, judicial review under § 1578 is not even arguably restricted to cases of "sanctions" for misconduct. While § 817 by its terms applied only to actions of the Secretary "authorized under section 816" ("Complaints and Sanctions"), § 1578 speaks broadly of application "to any final order . . . under section 1576 . . . not to award . . . financial assistance." Unlike § 816, § 1576 establishes the administrative procedures for review not only of "a corrective action or a sanction . . . imposed [on a "recipient" of funds] by the Secretary," but also of "a determination not to award financial assistance" to "*any* applicant for financial assistance." 29 U.S.C. § 1576(a) (emphasis supplied).[6] That, strictly speaking, appellant may be a "recipient" of rather than an "applicant" for funds is a distinction without a difference. Congress, in the legislative history, clearly indicated its intent to require "*recipients* of assistance under the Act, aggrieved by the Secretary's final decision in cases of *funding* . . . to obtain review of the Secretary's decision in the United States court of appeals. . . ." S.Rep. No. 469, at 1982 U.S.Code Cong. & Admin.News 2693 (emphasis supplied). For purposes of its request for continued use of CETA/JTPA funds then, we think appellant should be treated as "any applicant for financial assistance." 29 U.S.C. § 1576(a). Denial of appellant's application for an indefinite extension of expense-incurring authority thus constitutes a "determination not to award financial assistance," judicial review of which is governed by § 1578.

Additional reasons support our conclusion that Congress meant to subject disputes over the Secretary's exercise of his funding discretion to the procedures out-

---

5. Appellant might argue that jurisdiction over this matter does not lie in the court of appeals, because the termination of funding has not been reviewed by an ALJ, and the Secretary's decision thus cannot be a "final order" under 29 U.S.C. § 1578(a)(1). Even if we were to reach this argument and resolve it in appellant's favor, we would still be forced to affirm the district court's dismissal. Under the JTPA, *no* judicial review of the Secretary's decision to spend or not spend money is permitted unless such a decision is a "final order." 29 U.S.C. §§ 1576,

1578; S.Rep. No. 469, at 1982 U.S.Code Cong. & Admin.News 2693. *See infra* pp. 7–8.

We do not decide this case on this basis, however. Rather, for the purpose of resolving the question of what court properly has jurisdiction over the subject matter of appellant's claims, we assume the Secretary's action to be a "final order" within the meaning of the JTPA.

6. *See also* 20 C.F.R. § 629.57(c)(2) (requiring hearing before ALJ within 21 days of receipt of determination "denying financial assistance").

lined by §§ 1576 and 1578. First, by analogy, cases decided under former § 817 had interpreted the jurisdictional exclusivity of that section broadly, to restrict judicial review even where the statutory language less clearly applied than it does here. For instance, *CETA Workers' Organizing Committee v. City of New York*, 617 F.2d 926 (2d Cir.1980), held that § 817 provided "the exclusive judicial method of monitoring the federal agency's [Secretary's] own enforcement of the Act vis-a-vis the prime sponsors [appellant] or subrecipients." *Id.* at 935–36. The court concluded that § 817 precluded third parties from suing the Secretary for failure to force fund recipients to comply with provisions of CETA, despite the acknowledged absence in § 817 of any reference to third party suits. *Id.*[7] If former § 817, with its narrower language, nevertheless limited review of disputes over the Secretary's conduct to the court of appeals, *a fortiori* § 1578, with its more inclusive language, at least encompasses disputes over the Secretary's "determination not to award [further] financial assistance."

Finally, it would make little sense to read the JTPA as appellant suggests. By making §§ 1576 and 1578 applicable to both "applicants" for and "recipients" of funds, Congress has limited judicial review for the parties most likely to be aggrieved by the Secretary's decision not to approve a particular request for funds. Despite this evident attempt to prevent judicial intervention into funding disputes between applicants or recipients and the Secretary, appellant would have us believe that Congress did not intend to restrict judicial involvement when the funding dispute between an applicant or recipient and the Secretary involves the Secretary's authority to terminate funding altogether. This construction finds as little support in logic as in the statute and legislative history, and we decline to adopt it.[8]

### III

In sum, this cutoff of CETA funds fits the plain congressional intent with respect to language § 1578 as a "final order ... not to award ... financial assistance." Congress's decision to continue committing such matters to review only in the courts of appeals under the JTPA suggests a preference for limiting avenues of review of funding disputes. Nothing in CETA, the JTPA, or the legislative histories indicates that this preference should not be observed for a cutoff of all "financial assistance" under CETA. Further, the actions of the Secretary challenged in this lawsuit seem no less amenable to review in the court of appeals than reviews with more elaborate "administrative records," which appellant agrees would be covered by § 817, and by analogy would be covered by § 1578.

For these reasons, we hold that judicial review of this dispute over CETA funding

---

7. *See also Eastern Bank of Cherokee Indians v. Donovan*, 739 F.2d 153, 157–59 (4th Cir.1984) (holding that a CETA plan sponsor could not sue the Secretary for alleged violation of a contract to repay funds until after the administrative process had been exhausted, and then only under § 817 in the court of appeals).

8. Appellant also argues that, even assuming that the relevant statute limits review of the Secretary's decision to the court of appeals, the district court nevertheless retains residual federal question jurisdiction because the Secretary's action represented a "patent violation of agency authority or a manifest infringement of a substantial right irremediable under the statutory scheme." *Louisville and Nashville Railroad v. Donovan*, 713 F.2d 1243, 1247 (6th Cir.1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984).

We need not decide whether the Secretary's action was a "patent violation of agency authority" or a "manifest infringement of a substantial right," because even assuming the funding cutoff could be so-characterized, we perceive no tenable argument that any such violation was irremediable under the statutory scheme. The procedures spelled out in § 1578 provide ample opportunity for review of the Secretary's final orders. Appellant argues that this action is irremediable because of the absence of a final order. Acceptance of this argument would require us to extend the narrow irreparable injury exception of *Louisville and Nashville* to any case in which Congress limits judicial review to final actions or orders. We decline to give such a broad reading to the case, and conclude that the injury here, if any, may be remedied under the statutory scheme designed by Congress.

is committed to the court of appeals by 29 U.S.C. § 1578(a). We therefore Affirm the judgment dismissing appellant's complaint.